SMITH BROS. DRILLING CO. v. KLINTWORTH et al.

No. 31613. Jan. 9, 1945.

*155 P. 2d 235.*

14

Saunders & Van Wagner, of Shawnee, for plaintiff in error.

Wells & Wells, of Seminole, for defendants in error.

RILEY, J. This is an appeal from an adverse judgment in an action wherein plaintiff in error was plaintiff below. The parties will be referred to in the same relation as in the trial court.

Plaintiff is a copartnership composed of N. T. Smith and W. P. Smith, engaged in the business of drilling wells for oil and gas. Plaintiff drilled a well for Donmar Oil Corporation on a tract of land in Seminole county, leased by Donmar Oil Corporation under a contract to drill to the Wilcox sand. Plain-

tiff was to receive $8,000 in cash and a $10,000 payment in oil to be produced from the well, and off-set acreage. The well was completed to the Wilcox sand in August, 1941. It was not productive; plaintiff moved its machinery to another location. About September 10, 1941, Donmar Oil Corporation, through a Mr. Searight, contracted with defendants herein, Klintworth and Jenkins, to take over the well, plug back to the Hunton Lime formation above the Wilcox sand, set casing and test the well in the Hunton Lime where a showing of oil had been found in drilling the well. Donmar Oil Corporation assigned the lease on which plaintiff had drilled the well, to defendants, subject to the $10,000 oil payment to plaintiff and a like payment in the sum of $3,000 to another party. Defendants agreed "to plug back said well to the Hunton Lime, to furnish and run casing to said formation . . . thoroughly acidize and shoot the well in the Hunton Lime and properly test said formation for oil or gas, and to cement the pipe, complete and equip the well in a workmanlike manner." For the assignment of the oil and gas lease to the defendants, Donmar Oil Corporation was to be paid $17,000 in oil to be produced from said well, subject to the $10,000 oil payments to plaintiff. In said assignment, it was recited that it was understood that the Donmar Oil Corporation was the drilling contractor and Smith Brothers Drilling Company would "run the casing, bail the hole and drill any cement" as directed by defendant herein, without cost to them. Plaintiff was not a party to said contract.

About the same time, Donmar Oil Corporation and Smith Brothers Drilling Company entered into a written agreement reciting that Donmar Oil Corporation was then indebted to Smith Brothers Drilling Company in the sum of $7,000, being the unpaid balance of the cash consideration due to the Smith Brothers Drilling Company for drilling a well, and also reciting the assignment of the lease by Donmar Oil Corporation to Klintworth and Jenkins, reserving the oil payments in the amount

of $17,000, "payable upon the terms and in the manner specifically set out in said instrument . . . a copy of which assignment . . . has been submitted to the second party (Smith Brothers Drilling Company) and reference to which contract is hereby made for further particulars." The contract recited a consideration of $1 and to secure payment of the $7,000 due Smith Brothers Drilling Company on the drilling contract assigned to Smith Brothers Drilling Company the $17,000 oil and gas payment reserved or agreed to be paid to Donmar Oil Corporation until Smith Brothers Drilling Company had been paid in full the $7,000, and when said sum was so paid, whether in whole from the oil run or partly from the oil runs and partly from other sources, the balance of the $17,000 to revert to Donmar Oil Corporation.

About the same time one of the Smith Brothers and Klintworth met at Shawnee to agree upon the terms by which Smith Brothers Drilling Company was to put a rig back on the well and do such work as might be necessary. Klintworth had with him the written assignment agreement between Donmar Oil Corporation and Klintworth and Jenkins. They did not enter into a written agreement but did enter into an oral contract under which Smith Brothers Drilling Company was to and did move a "Cardwell Unit" back to the well and did certain work which included plugging the well back, bailing the well, running the casing and drilling cement. Some of this work was to be done by Smith Brothers Drilling Company free of cost and some was to be paid for by defendants. There is little or no controversy about any part of the work except the drilling of the cement. After the work was done, plaintiff presented defendants with a bill for $1,250, which included certain items for moving the rig, etc., and five days drilling cement at $150 per day and one day drilling cement and shooting the well at $150. There was some discussion about certain items charged for, such as moving the rig, etc., which defendants contended was not to be paid for by them. Thereupon plaintiff reduced the bill to $1,000, which included items of five days of 24 hours each, drilling cement at $150 per day, and one day of 16 hours, bailing the well and drilling cement $100. Defendants admitted owing $150 of these items for which they were liable, but refused payment of the balance.

Thereupon plaintiff commenced this action on the claim for $1,000. Defendants answered admitting they owed $150, but asserted that plaintiff had agreed to drill the cement free of charge to the defendants.

Trial was by agreement to a jury of six men, resulting in a verdict and judgment for plaintiff for only the $150 admitted to be due and for defendants as to costs, and plaintiff appeals.

The chief controversy at the trial was the question of who was liable for the expense of drilling the cement. It is conceded that plaintiff was to plug the well back and run the casing, and that defendants were to pay for cementing the casing. For cementing the casing, defendants employed Halliburton Oil Well Cementing Company. In cementing the casing, by some mishap, the cause of which is not clearly shown, Halliburton Oil Well Cementing Company left more than 500 feet of cement in the casing. It was necessary to drill this out before the well could be shot and tested. Plaintiff drilled it out and contends that it is entitled to be paid the sum of $1,000 therefor. Defendants contend that plaintiff had agreed to drill out the cement at its own expense. On this question the evidence is in direct conflict. The testimony of plaintiff was clear and definite that it had refused to agree to drill any cement. Defendants' testimony was equally direct and positive that the agreement was that plaintiff was to drill all cement without regard to the amount. The evidence being thus in conflict, the verdict of the jury conclusively decided the question in favor of defendants.

At the trial, defendants, over the objection of the plaintiff, offered, and the

court admitted, in evidence the contract or agreement between Donmar Oil Corporation and defendants containing the statement above quoted that:

"It is understood, however, that First Party's contractor Smith Brothers Drilling Company, will run the casing, bail the hole and drill any cement as directed by Second Parties without cost to Second Parties."

Plaintiff contends that the admission of that agreement in evidence is reversible error in that it is an agreement between Donmar Oil Corporation and defendants and that plaintiff was not a party thereto and did not sign it. In support of this contention, plaintiff cites Hunt v. Jones, 98 Okla. 99, 224 P. 354, wherein it is held that in an action by a real estate broker to recover an alleged commission on the sale of land:

"It is error to admit evidence of the terms of the contract between defendant and other real estate agents for the purpose of impeachment or for any other purpose, in the absence of any evidence tending to show any connection between plaintiff's contract and the contract of the defendant with such other parties."

Other cases are cited to the same effect.

The rule there stated is not applicable in the instant case for the reason that there is evidence directly tending to show a connection between plaintiff's contract and the contract of the defendants with Donmar Oil Corporation. Plaintiff had a direct interest in any production that might be obtained from the well in question. First, plaintiff had a $10,000 payment in oil from the well. Second, plaintiff took the assignment of an additional $7,000 still due it. The latter agreement made direct reference to the contract between Donmar Oil Corporation and defendants. It recites the source of the $7,000 oil payment; that the consideration therefor was that defendants had agreed to plug the well back to the Hunton Lime, run the casing, acidize, shoot and test the well in the manner specifically set out in the agreement between Donmar

Oil Corporation and defendants, and recited that a copy of said contract had been submitted to plaintiff, and that reference was made thereto for further particulars.

Plaintiff admitted that said agreement was presented to N. T. Smith; that Klintworth had a copy of said contract with him at the time the oral agreement was entered into. Plaintiff's witness, N. T. Smith, who made the oral agreement with Klintworth, testified that he saw the contract, read it, and understood that it contained the provision referred to relative to drilling the cement. He testified that he refused to sign the contract on account of that provision. He admitted, however, on cross-examination, that he had first stated that he would not drill the cement; that thereafter Klintworth stated to him:

"All right, you have more interest out there than we have, we will just take up and quit."

That thereupon he, N. T. Smith, stated:

"Oh, well, we will go ahead and drill out the cement, there will not be much of it."

That was a direct admission that plaintiff agreed to the provision of said contract. The contract was admissible in evidence because it was shown that the contract was directly connected with the oral agreement between plaintiff and defendants. Herring v. Hood, 55 Okla. 737, 155 P. 253; West v. Fondren et al., 92 Okla. 239, 218 P. 1080; Gibson Oil Co. v. Westbrooke, 160 Okla. 26, 16 P. 2d 127. While it might have been unfortunate that more cement was left in the casing than anticipated, nevertheless, if plaintiff agreed unconditionally to drill the cement, the burden was assumed. The verdict of the jury conclusively settles the issue against plaintiff.

Judgment affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.